The opinion of the Court was delivered by
WITHERS, J.
The city council of Charleston have passed an ordinance declaring that, “ every slave brought into the city, for sale, from beyond the limits of tbe State, shall be subject to a tax of ten dollars;” and tbe city assessor is *243 required, to ascertain tbe number of sucli slaves and assess the said tax “ on the owners, or persons in possession of such slaves for the purpose of saleand provision is made, in default of payment of the tax, for its collection by execution.
Measures have been taken to enforce this ordinance upon the relators who come within its provisions, and they have succeeded in obtaining a prohibition from one of our brethren, from whose decision an appeal comes up to this Court.
The grounds taken to maintain the motion for prohibition are:
First. That the charter of the city of Charleston does not confer the power to make the ordinance in question.
Second. That, if it does, the same is forbidden by the Constitution of the United States.
- First. The charter was granted in 1783 ; among the inducements to the grant is specified the growing importance of Charleston, in respect to an “ extensive commerce with foreign nations.” It is enacted that “ the said city council shall also be vested with full power and authority, to make such assess•ments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the said city, as shall appear to them expedient.” They are restrained from laying “a duty of more than three-pence per ton on any shipping in the harbor and all their by-laws, rules and ordinances, are subject to revisal, alteration, or repeal by the legislature.
Whether the tax of ten dollars upon each slave brought within the city for sale, from beyond the limits of this State, be within the power of taxation conferred, depends upon the inquiry, whether such slave be taxable property held by one within the city, for if it is such property the council are expressly authorized to tax. It is objected, that such a slave is *244 not "taxable, property,” because tlife State does not tax it. This view would convert tbe words “ taxable property” into tbe pbrase, property taxed by tbe State. By sucb an exposition, tbe sources of revenue for tbe city government, would be exceedingly restricted; a multitude of taxes, or assessments, would be swept off at one blow. Although sucb a result could not serve to maintain an ill-gotten power, yet it suggests an incongruity with tbe declared functions which tbe legislative authority expected tbe municipal corporation to perform, which functions can be collected from tbe recital of inducements that led to tbe establishment of a local government. Tbe city of Charleston can tax only property within tbe corporate limits, and if confined to those species only which tbe State may happen to tax, then the sources of revenue for the city will vary, from time to time, as the condition of the State treasury and the purposes of State policy may vary; and if the State should happily find its coffers so supplied as to need little or no taxation, the city would be exceedingly pinched in its treasury, let those local and peculiar circumstances and necessities which led to its incorporation, be what they might. In the language of Ch. David Johnson, (City Council ads. The Vestry of St. Philip's Church, 1 McM. Eq. 148) in contemplating such an event, “ Charleston, without the power of taxation must become a waste, and riot and disorder prevade her streets.” There seems to be good foundation for the interpretation by Ch. Harper, who represented the Court in the case above cited, (p. 144, 2 McM. Eq.) to wit, “I.do not well perceive what definition can be given to the words ‘taxable property,’ unless they be made to mean all property not excepted by law from taxation." Such construction is illustrated by sundry cases in our reports, of recent date, as, for example, State vs. City Council, 5 Rich. 564; Bank vs. City Council, 3 Rich. 342: State vs. City Council, 4 Strob. 217.
. It is unquestionable that a very ample power of taxation *245 is bestowed upon tbe city of Charleston as to persons and property within the corporate limits, and it was bestowed by the State in 1783, when it was itself unrestricted, as to the capacity to make such grant. The delegation of the taxing .power must haye been intended to be commensurate with the scope of the corporate objects and the undefinable and varying exigencies arising within that scope. It was then clearly foreseen, that as population increased and trade with it, the demands for revenue would grow apace; such demands could not have been expected to diminish or expand in correspondence with those of the State at large, and, therefore, it would not be reasonable to subject a power ample in itself, and necessarily regulated by peculiar contingencies, to the exercise of a like power controlled by circumstances,' wholly dissimilar. The first objection, therefore, to the tax in question, is not well taken.
The second objection is, that the tax in question, is forbidden by the Constitution of the United States, and reference is made to clause 5, sec. 9, art. 1, of that instrument. It is this, "No tax or duty shall be laid upon any article exported from any State.”
There are two reasons why this restriction cannot apply to this case, though one is enough. In the first place, the prohibition is upon Congress, and is by the fair import of the words, and the connection in which they stand, subsidiary to a very important purpose, to wit, to restrain Congress from fostering or oppressing one port or the commerce of one State, to the end of destroying equality and uniformity, as to levies of contributions from foreign commerce. Nor does it follow that a restriction upon the taxing power of Congress, shall operate a restraint upon that great and most necessary power in a State. In the second place, even if we say that neither Congress nor any Skate (and so read the clause) shall lay any tax or duty upon any article exported from that State, then it is plain this would not affect this tax, because it is not upon *246 any article exported from South Carolina. It is hardly necessary to observe that, of course, what the State cannot do, no creature that springs from its legislation can do. But it is manifest, that the above recited clause from the Constitution of the United States, does not at all apply to this case, in letter or substance.
The second clause of sec. 10, art. 1, Constitution of the United States, would seem to have a more plausible application to the present case. It is this: “No State shall without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws, and the net produce of all duties and imposts, laid by any State on imports and exports, shall be for the use of the treasury of the United States, and all such laws shall be subject to the revision and control of the congress.” Bead in connection the clause 1, sec. 8, art. 1, “The congress shall have power to lay and collect taxes, duties, imposts and excises, but the last three to be uniform throughout the United States,” and remember, that the federal interest required the revenue from foreign commerce to go into the common treasury, that the non-importing but consuming States, should not be liable to contribute their quota to the federal exchequer, by direct taxation, and also contribute, as importers and exporters through the ports of other States (by a tax or duty laid by those States on imports and exports,) to the treasury of such States, and the object of the restriction above cited is manifest. . It will be plainer still, when we remember that if such tax or duty had .been left within the power of a State, it might have seriously impaired the source of revenue to the federal treasury, have embarrassed the pow'er of congress to “ regulate foreign' commerce,” which power it has exercised, and have disturbed the fundamental end that all duties and imposts must be uniform throughout the United States.
There are two objections to the applicability of the restric *247 tion under consideration to tbe tax now in question, which reduced to short propositions are these :
First, the slaves brought from Yirginia are not “ imports” in the sense of the Constitution.
Second, if they were, the tax imposed, and now resisted, is not a tax on an “import;” for the ordinance imposing it interposes no obstruction to an importation of the slaves, but it levies a contribution, per capita, after they are imported, after they have come under the protection of the laws of the State and regulations of the city, free from any protection or authority of the State whence they came, are mingled with the slave population of the city, and held within its corporate limits for sale.
For an elaboration of the argument which sustains these two propositions, it is sufficient to refer to the opinion pronounced for the Court of Errors, at the present term, in the case of Rhett & Robson vs. H. L. Pinckney, tax collector.
We forbear any observations upon the question, whether this tax may not be supported upon the footing of an exercise of police power; for we think it fully maintainable upon other grounds set forth.
The motion for a reversal of the judgment awarding a writ of prohibition against the city council of Charleston,' is granted.
O’Nball, Wardlaw, WhitNer, and Munro, JJ., concurred.

Motion granted.